### STANDARD MUSIC ROLL CO. v. F. A. MILLS, Inc.

(Circuit Court of Appeals, Third Circuit. April 24, 1917.)

No. 2216.

1. COPYRIGHTS ⚖=50—LICENSE—COMPONENT PARTS—STATUTE.

Under Copyright Act March 4, 1909, c. 320, § 3, 35 Stat. 1076 (Comp. St. 1916, § 9519), providing that the copyright shall protect all copyrightable component parts of the work, and that the copyright on composite works shall give the proprietor all the rights in respect thereto which he would have if each part were individually copyrighted, the copyright of a musical composition protects both the words and music, and entitles the owner to limit the use of the copyright either to 'words or music, or to allow both to be used.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 47, 49.]

2. COPYRIGHTS ⚖=48—LICENSE—CONSTRUCTION—WORDS OF SONG.

A license to use a copyrighted musical composition, which gave the licensee the right to use the composition in the manufacture of its sound records in any form whatsoever, extended the original copyright of the composition to the instruments serving to reproduce mechanically the musical work, and required the licensee to pay 2 cents for every record and copy of record manufactured by it to reproduce mechanically the musical work, licenses the use of only the music, so that the inclusion of the words on a printed slip in the box with the rolls for mechanically reproducing the music was an infringement of the copyright.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 46.]

3. COPYRIGHTS ⚖=75—LICENSE—FAILURE TO FILE NOTICE—EFFECT.

Under Copyright Act, § 1e (Comp. St. 1916, § 9517), giving the right to make any arrangement of a musical composition in any form of record in which the thought of the author may be recorded, or from which it may be read or reproduced, but requiring that permission be given to all producers of mechanical records the right to reproduce the composition, if such right is given to any, and requiring notice of the license to reproduce mechanically to be filed, failure to file such notice being a complete defense to any suit or proceeding for infringement of such copyright, the failure to file notice of license to use the music only of a song for mechanical reproduction is no defense to a suit for infringement of copyright of the words.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 65.]

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Suit by F. A. Mills, Incorporated, against the Standard Music Roll Company for infringement of copyright. Decree for plaintiff (223 Fed. 849), and defendant appeals. Affirmed.

Louis M. Sanders, of Orange, N. J., for appellant.
Nathan Burkan, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. This is an appeal from the decree of the District Court adjudging the Standard Music Roll Company to be an infringer of the plaintiff's copyright in the words of the musical composition entitled "Waiting for the Robert E. Lee," and awarding damages and costs. 223 Fed. 849.

There are no facts in dispute. In May, 1912, the words and music of the song were copyrighted together as a musical composition under the act of 1909, and in June the Mills Company (the present owner) licensed the Standard Company "to use the copyrighted musical composition in the manufacture of its sound records in any form whatsoever," apparently granting a similar license to at least one other person—the Vocalstyle Company—but filing no notice of user under section 1e of the statute. The Standard Company manufactured and sold perforated music rolls adapted to reproduce the music covered by the copyright, and also for a time printed the words of the song on separate slips of paper, and inclosed these slips in the boxes containing the rolls, making no charge for the words. The royalty agreed upon, and actually paid, was two cents for every perforated roll adapted to reproduce the music. Two questions are presented for decision: (1) What was the scope of the license? and (2) what effect, if any, should be given to the failure to file a notice of user?

1. The Scope of the License. The material parts of that instrument are as follows—the Mills Company being described as the "Publisher," and the Standard Company as the "Company":

"Consent D—Rolls for Automatic Instruments.

"Agreement made, etc.

"Whereas, the Publisher is the owner of the copyright of the musical composition, entitled 'Waiting for the Robert E. Lee,' secured by it subsequent to July 1, 1909; and

"Whereas, the Company desires the right, privilege, and authority to use the ———— of the said copyrighted musical composition in the manufacture of its music rolls, and the Publisher is agreeable to grant such right, privilege, and authority, subject to the terms and conditions hereinafter set forth:

"Now therefore witnesseth:

"(a) The Publisher hereby gives to the Company the right, privilege, and authority to use the said copyrighted musical composition in the manufacture of its sound records in any form whatsoever, and hereby consents to extending the original copyright of said musical composition to the instruments serving to reproduce mechanically the said musical work.

"(b) The Company hereby agrees to pay to the Publisher two cents for every record and copy of record manufactured by it serving to reproduce mechanically the said musical work.

"(c) The Company hereby agrees to render to the Publisher quarterly statements, the 1st of January, the 1st of April, the 1st of July, and the 1st of October, of all records and copies of records serving to reproduce mechanically the said musical work, manufactured by it during the preceding quarter.

"(d) It is expressly understood that the said musical composition shall not be used in connection with a musical medley for band or orchestra, or other medley arrangements, without the written consent of the Publisher first had and obtained."

[1] In our opinion, little need be added to the ordinary and natural meaning of this agreement. We decided in Witmark v. Roll Co. (C. C. A. 3d) 221 Fed. 376, 137 C. C. A. 184, that under the copyright legislation before 1909 a manufacturer of automatic music rolls might lawfully inclose with the roll a printed slip containing the words of a song copyrighted as a musical composition, unless the words had been separately copyrighted as a "book." But section 3 of the act of 1909 changed the law in this respect, declaring:

"That the copyright provided by this act shall protect all the copyrightable component parts of the work copyrighted. * * * The copyright upon composite works * * * shall give to the proprietor thereof all the rights in respect thereto which he would have if each part were individually copyrighted under this act."

Whenever, therefore, a song is now copyrighted as a musical composition, both the words and the music are protected; and, as these do not constitute an indivisible whole, the owner may limit the use of his copyright either to the music or to the words, or he may allow both to be used.

[2] That the foregoing writing was intended merely to allow the Standard Company to reproduce mechanically the musical sounds of the song in question, we see no reason to doubt. On this subject the recital of what "the Company desires" is silent—the blank being left unfilled—and the Publisher confined the grant to such use of the composition as may be needed "in the manufacture of [the Company's] sound records in any form whatsoever." In this action, we are only concerned with automatic music rolls, and as these are not adapted to reproduce words, we see no sufficient ground for debate. This view is emphasized by the provisions extending the copyright to *"the instruments serving to reproduce mechanically* the said musical work," and describing the records or copies of records as manufactured for the purpose of reproducing "the said musical work mechanically." Indeed, we think the meaning of the license is so clear that merely to state it may well take the place of an argument.

[3] 2. The second question arises under the last two provisos of section 1, clause (e). By that clause the right is given:

"To perform the copyrighted work publicly for profit if it be a musical composition and for the purpose of public performance for profit; and for the purposes set forth in subsection (a) hereof"—i. e. to print, reprint, publish, copy, and vend the copyrighted work—"to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced. * * *

"And provided further, and as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of two cents on each such part manufactured, to be paid by the manufacturer thereof. * * *

"The payment of the royalty provided for by this section shall free the articles or devices for which such royalty has been paid from further contribution to the copyright except in case of public performance for profit:

"And provided further, that it shall be the duty of the copyright owner, if he uses the musical composition himself for the manufacture of parts of

instruments serving to reproduce mechanically the musical work, or licenses other to do so, to file notice thereof, accompanied by a recording fee, in the copyright office, and any failure to file such notice shall be a complete defense to any suit, action, or proceeding for any infringement of such copyright."

The object of these provisos seems to be the prevention of monopoly or favoritism in granting the right to reproduce a musical work mechanically. If the owner authorize one person to reproduce the work mechanically, other persons also may reproduce it in a similar mechanical manner, subject to the payment of the statutory royalty. And, in order to compel the owner to make the license public by filing a notice in the office at Washington, the statute provides as a penalty that failure to file shall be a "complete defense to any suit, action, or proceeding for any infringement of *such copyright.*" What does "such copyright" refer to? Manifestly, as we think, some particular right to reproduce the musical work mechanically. Just how the reproduction is to be made, and whether it is to be confined to the music or shall extend to the words also, is in the first instance left for the owner to determine. But after he has determined it, and has granted a license to one person, he thereby opens the field to all others to do the same, or a similar, thing. If he license one person to reproduce both words and music by the phonograph method, other persons may reproduce them both by using the phonograph. If he license one person to reproduce the music by the automatic roll, others also may use the roll, but they do not thereby acquire the right to print the words. In brief, "such copyright" means the particular right covering mechanical reproduction that happens to be in controversy—in the present case, the right to reproduce, not the words but the music, mechanically. The Standard Company is not charged with infringing "such copyright"; it is charged with infringing the copyright on the words granted under clause (a), and to this charge clause (c) affords no defense under the facts in proof, for the other licensee, the Vocalstyle Company had no right to reproduce the words, but was merely allowed to reproduce the music mechanically, and in fact employed the same method used by the Standard Company.

The decree is affirmed.