EDWARD B. MARKS MUSIC CORPORATION, Plaintiff-Appellant,

v.

CONTINENTAL RECORD COMPANY, Inc., and Remington Records, Inc., Defendants-Appellees.

No. 157, Docket 23343.

United States Court of Appeals Second Circuit.

Argued Feb. 10, 1955.

Decided April 13, 1955.

Motion for Allowance of Counsel Fees Denied May 10, 1955.

Abeles & Bernstein, New York City, for appellant, Julian T. Abeles, Arnold J. Bernstein, New York City, of counsel.

Maxwell Okun, New York City, for appellees.

Rosenman, Goldmark, Colin & Kaye, New York City (Godfrey Goldmark, Am-

brose Doskow, New York City, of counsel), for Record Industry Ass'n of America, Inc., amicus curiae.

William Klein, II, and John Schulman, New York City, for Songwriters Protective Ass'n and Sidney Wm. Wattenberg, for Music Publishers Ass'n, Inc., amicus curiae.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and SMITH, District Judge.

HINCKS, Circuit Judge.

The plaintiff-appellant is the assignee of the renewal copyright in the musical composition entitled, "In the Good Old Summertime." This composition was first published and copyrighted in 1902. A renewal copyright was obtained on the lyric in 1929, and on the music in 1930. During the renewal term the plaintiff, alleging that he has published two new editions of the composition, instituted an action charging the defendants with infringement of the renewal copyright by the sale of phonograph records of a "version" of the composition, without obtaining plaintiff's consent. The defendants admit that they have manufactured and sold phonograph records "embodying" plaintiff's composition but they deny the allegation of infringement. In the court below the plaintiff moved for summary judgment and the defendants sought judgment on the pleadings. Both motions were denied. The defendants also moved for summary judgment. That motion was granted and the complaint dismissed. D.C., 120 F.Supp. 275. It is from this judgment of dismissal that the present appeal is taken.

On appeal the principal question argued was whether Section 1(e) of the Copyright Act of 1909, 17 U.S.C.A. § 1 (e), 35 Stat. 1075, protects the plaintiff from unauthorized mechanical reproduction of its composition on phonograph records.

Prior to 1909, mechanical reproduction of compositions even if copyrighted was in the public domain and hence unauthorized mechanical reproduction on phonograph records was permissible. See White-Smith Music Publishing Company v. Apollo Co., 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655; Shilkret v. Musicraft Records, 2 Cir., 131 F.2d 929. In 1909 Congress so amended the copyright law, 17 U.S.C.A. § 1, as to extend to the holder of a copyright protection against unauthorized mechanical reproductions which, under the rule of the cases just cited, had theretofore been lacking. But this extended protection was limited by Section 1(e) of the 1909 Act, 17 U.S.C.A. § 1(e), which so far as here pertinent we set out in the margin.[1] The words with which we are most concerned are those which specify that the protection afforded against the mechanical reproduction of compositions "shall include only compositions published and copyrighted after July 1, 1909." It is undisputed that the composition here involved was first published and copyrighted before 1909, and it is abundantly clear that, under the White Smith and Shilkret cases, the composition, prior to July 1, 1909, was not protected against mechanical reproductions. Nevertheless, the plaintiff contends that by virtue of its renewal copyrights in 1929–1930 it is now entitled under the Amendatory Act of 1909 to protection against mechanical reproductions. Plaintiff argues that the renewal of the copyright created a new estate, i. e., a new grant of copyright separate

1. The pertinent portion of Section 1(e) of the 1909 Act, 17 U.S.C.A. § 1(e), reads as follows:

"To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any sys-

tem of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: Provided, That the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, and * * *."

and independent from the first copyright and that, since the renewal was obtained after 1909, the composition is protected under Section 1(e).

The plaintiff cites many authorities for the proposition that a renewal copyright creates a right distinct from that obtained under the original copyright. But it has lifted this concept from cases concerned with the ownership of renewal rights or with problems having no relation to the ones involved in these proceedings. Such cases are not determinative of the question here posed. None of the many briefs filed in this action have disclosed a precedent which squarely controls the problem here presented.

We think the words above quoted from the *proviso* to Section 1(e) are clearly destructive of the plaintiff's contention that Congress intended that the mechanical reproduction of a song, which for years had been in the "public domain," may by renewal, be fenced into a monopolistic field. Nor do we find anything in Section 24 of the Copyright Act, 35 Stat. 1081, 17 U.S.C.A. § 24, providing for the renewal of copyrights, which lends support to the plaintiff's position. The phrasing utilized in Section 24, particularly when read in conjunction with Section 1(e), suggests a contrary conclusion. For Section 24 does not state that a renewal operates as the grant of a new monopoly having a larger field than the original copyright. It states simply that "subsisting" copyrights may "be renewed and extended" and that in certain instances such renewal and extension may be had "for a further period such that the entire term shall be equal to that secured by this Act, including the renewal period." Section 24 requires that application for renewal or extension is to be made "one year prior to the expiration of the existing term." Such language militates against the interpretation of Section 1(e) for which the plaintiff contends.

■ Plaintiff links with his argument the proposition that when it printed two new editions of the song during the re-

newal period it "republished" the composition and that such *republishing* comes within the meaning of the term "published" appearing in the proviso to Section 1(e). The force of this argument we think impaired by our treatment of plaintiff's renewal theory. But that aside, it seems clear that the construction by the court below of the word "published" as meaning "first published" is correct. The legislative history of Section 1(e) does not indicate that anything to the contrary was intended. See H.R. 2222, 60th Congress, 2nd Sess.

■ A reading of the Act in its entirety reinforces the conclusion just expressed. The proviso to Section 7 of the Act of 1909, 35 Stat. 1077, now 17 U.S.C.A. § 8, uses the words "publication or republication" which fairly indicates that Congress thought there was a difference between such expressions and, if its intent had been to provide the rights here sought by appellant, it would have used the words "published or republished" in the proviso to Section 1(e). It is also to be noted that Section 62 of the Act of 1909, 35 Stat. 1087, now 17 U.S.C.A. § 26, states that " 'the date of publication' shall in the case of a work of which copies are reproduced for sale or distribution be held to be the earliest date when copies of the first authorized edition were placed on sale, sold, or publicly distributed by the proprietor of the copyright or under his authority * *." Plainly, a republication after copies of the first edition were placed on sale could not satisfy this statutory definition of " 'the date of publication.' "

■ All things considered, we hold that under the Amendatory Act of 1909 the plaintiff by a renewal did not acquire a right, theretofore lacking, to protection from mechanical reproduction on phonograph records.

But the plaintiff contends that the court below erred in disposing of the case on a motion for summary judgment: that the pleadings framed a genuine issue of fact on which it was entitled to a trial. This contention is based on

paragraph 15 of the plaintiff's complaint, in which it was alleged: "After December 29, 1937, defendants and each of them infringed said renewal copyright, in that without any authorization, permission, consent or license of plaintiff, defendants produced, and manufactured, placed upon the market and sold parts of instruments serving to reproduce mechanically, *a version of said musical work.*" (Emphasis supplied.) By its answer, the defendant, among other defenses, denied that it had mechanically reproduced a *version* of the copyright composition. However, when the plaintiff moved for summary judgment it abandoned its contention that the defendant had reproduced a *version*. It rested its motion on two supporting affidavits wherein it was stated: "The action is brought to recover damages and for incidental relief, for defendants' infringement of the renewal copyright on its musical composition entitled 'In the Good Old Summertime' by the unauthorized manufacture and sale of parts of instruments serving to reproduce mechanically (on phonograph records) *said musical* work." (Emphasis supplied.) Nothing in its papers on this motion indicated that the plaintiff claimed protection from the reproduction of adaptations or versions of the composition. The relief sought was limited to protection against the reproduction of the composition in its original form.

■ However, we do not rest on the papers addressed to the plaintiff's motion for summary judgment. More significant is the fact that when the defendants cross-moved for summary judgment without injecting into the case any issue relating to a *version* of the composition, the plaintiff's supplemental affidavit in opposition to the cross-motion not only failed to present any data tending to establish the existence of a genuine issue of fact but also wholly failed even to refer to any claim of an infringing *version*. It is thus apparent that the plaintiff was content to submit on the question of law which we have decided adversely to its contention, and that the formal issue in the pleadings as to a *version* of the composition was merely a sham issue which should not be allowed to frustrate the beneficent objectives of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The Rule was designed to enable the trial judge, by piercing formal verbiage, to filter out of the pleadings sham issues which might otherwise cause needless and time-consuming litigation. Engl v. Aetna Life Insurance Co., 2 Cir., 139 F.2d 469; Willingham v. Eastern Air Lines, 2 Cir., 199 F.2d 623; 6 Moore's Federal Practice, Par. 56.12 (2). Cf. Justice Cardozo's language in his opinion in Richard v. Credit Suisse, 242 N.Y. 346, 152 N.E. 110, 45 A.L.R. 1041. But a plaintiff in his opposition to a motion for summary judgment cannot abandon an issue and then, after an unpalatable decision by the trial judge, on appeal, by drawing on the pleadings resurrect the abandoned issue. This is especially so here because a reading of Paragraph 15 in the context of the entire complaint strongly suggests that its use of the word "version" was no more than fortuitous and never intended as the basis for a substantial claim.

The parties have also addressed argument to the question whether, as a matter of law, the plaintiff is entitled to protection against mechanical reproductions of *versions* of the composition here involved. The trial judge thought not. Since we are satisfied that he rightly granted the defendants' motion for summary judgment on the theory that the motion papers did not raise any genuine issue of fact involving that question, we express no view on that point.

Affirmed.

On Motion for Allowance of Counsel Fees on Appeal.

PER CURIAM.

■ The defendants below, who prevailed in the trial court and again on appeal, seek an order allowing as part of the taxable costs the fees of their attorneys for services in prosecuting the

appeal. Although in copyright cases such an allowance is within our discretionary power, 17 U.S.C. § 116, we feel that in this case the unsuccessful litigant should not thus be penalized. The litigation which it instituted was not vexatious but involved a novel question of statutory interpretation. We find no basis for questioning the good faith of the plaintiff in instigating the litigation. Official Aviation Guide Co., Inc., v. American Aviation Associates, 7 Cir., 162 F.2d 541; Overman v. Loesser, 9 Cir., 205 F.2d 521, certiorari denied 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407.

Motion denied.